Good morning everyone and welcome to the Ninth Circuit. We have three cases on calendar today. We'll go ahead and we'll just get started. We'll call the first case Black Rock Coffee Bar versus BR Coffee. May it please the court, I'm Kristen Asai appearing on behalf of the I'd like to reserve three minutes for rebuttal. Very well. This case presents a narrow question. Can a party compelled to arbitrate by a court order later unilaterally abandon the arbitration when it is unhappy with a ruling affecting another party and then use its lack of participation to vacate the arbitration award? The district court allowed the BR entities to vacate the arbitration award against them on this basis and this court should reverse. Before I get into the merits of my argument, I'd like to clarify some of the party names in this case because it's a little bit messy. So in our briefing before this court, we referred to the appellees as the BR entities. Those are the entities that were originally compelled to arbitration by the district court. Those are the franchisees? Correct. All right. Can we call them franchisees? Sure. The only difference with the franchisees is that one of the entities is a umbrella holding company that was not actually an operating company, but if it helps for this court's purposes, we can call them the franchisees. That would help. Great. And the other parties that we've referred to are the BR owners. Those are the owners of the franchisees. Can we call them owners? Owners, yes. And the reason that there is some messiness is because in the district court's original order compelling arbitration, the district court used the phrase BR parties to refer to the franchisees and throughout the arbitration record, the arbitrator also referred to the franchisees as the BR parties. But then the BR owners, the owners were later added to the arbitration and were not subject to the original order compelling arbitration. Some of the messiness too... Which is where the whole thing got... Yes. And the district court's order that vacated the arbitration award here referred to the entities, the franchisees and the owners as sometimes the BR parties and sometimes referred to conduct by just the owners as the BR parties. So there is a little bit of messiness. So I'm going to try my best to be very specific today, talk about the franchisees and then the owners. That would help. Thank you, Your Honor. So there are two bases on which the district court vacated. Under 10A4 for a manifest disregard of law with respect to the error in adding the owners to the arbitration. And then under 10A3 for depriving the franchisees of a fundamentally fair hearing. So I'm going to start with the 10A4. The district court vacated the award based on that arbitrator's error in adding the owners and then held that that error tainted the entire process, therefore providing a basis for the franchisees to vacate. Can I stop you right there and ask a question?  It's my understanding, and this is exceedingly confusing, but it's my understanding that back in approximately 2022, the district court ruled that the owners should not have been joined in the arbitration. Is that correct? That ruling was in February of 2023. 23. And it's my understanding that there was no appeal from that order. That is correct. So we are bound by that determination, are we not? Correct. For purposes of this appeal, we are assuming that the arbitrator did not have authority. To join the owners. Correct. But the argument is that that still did not constitute a manifest disregard of law. But for purposes of the argument today, I just really want to focus on why the error in exceeding jurisdiction with respect to the owners did not taint the entire award such that it provided a basis to vacate us to the franchisees. What this court said in the Comedy Club versus Improv West case is that when an arbitrator exceeds his authority or engages in a manifest disregard of law under 10A4, only the aspect of the award that suffers from the 10A4 defect should be vacated. In the Comedy Club, the arbitrator had exceeded his authority and engaged in the disregard by issuing an injunction that extended to non-parties and because the injunction violated a California non-compete statute. But this court did not throw out the entire award on that basis. It held that the remainder of the award could stand and only the aspect where the arbitrator actually exceeded its authority should be vacated. Well, I understand your argument on that, but the award of the arbitrator is based upon as I understand it, the sanctions for failure to participate in discovery. Is that correct or not? That is not the sole basis of the award. But it is a basis. The award was based on BlackRock's motion for summary disposition, which under the AAA rules, the arbitrator is not permitted to make an award based on the sole default of a party, and he did not do so. BlackRock submitted six declarations, 23 exhibits relied on the record in that case, as well as the sanctions order. But the sanctions order was not the sole or even the primary basis. It was some factual basis that was... Correct, but it was based on the evidentiary record before the arbitrator, which he had an opportunity to review and for which the franchisees had an opportunity to oppose that motion and present evidence. And they didn't? They voluntarily chose to not do so. Is that because there were matters pending in court? What the district court found was that it was because the owners had filed an action seeking to challenge the jurisdictional issues, and that somehow that, and this goes more to the 10A3 argument perhaps from what the district court said, but that it became a fraught landscape for the BR entities or the franchisees to be navigating. But that's not the standard. The entities could have and should have continued to participate in the arbitration because they did not have a jurisdictional objection. They did not seek a stay from the court in any way, and they had a full and fair opportunity to participate. They simply decided to side with the owners in part because it was the same council appearing on behalf of the owners and the franchisees and just stopped participating. And that is not a proper basis for the court to vacate. And so under 10A4, there is nothing on the face of the award demonstrating any error with respect to the franchisees. It is undisputed that the arbitrator had authority over the franchisees and that the claims that the arbitrator adjudicated were within the scope of the party's arbitration agreement. So the district court's basis for vacating on this tainting the entire process, I just want to address that briefly, which is that typically arises when the parties do not receive the decision maker that they agreed to or the process that they agreed to. Somehow the entire arbitration that the parties contracted for was tainted. For example, in the moving case where the lead arbitrator was impersonating an attorney and it was not someone that the parties had ever agreed to, therefore the entire award was infected by the error. Or in the Pool Ray case from the Fifth Circuit that the district court relied upon where an impermissible plaintiff had intervened, resulting in both plaintiffs and defendants in the arbitration not agreeing to the process with an arbitrator they had not agreed to and an indivisible award that made no basis on which the court could parse it between the proper parties. Okay, if we were to agree with you and reverse the district court's order vacating the arbitration, that would leave us where? That would leave you in the position of enforcing this arbitration award against the franchisees?  And BlackRock only moved to confirm the award as to the franchisees. It never moved to confirm the award as to the owners and has no intention to in light of the district court's order in joining that. Some of the damages, I think maybe all of them were joint damages against. So how is that going to be split up then? There are six counts in the arbitration award. The first three were only as to the entities except for, I'd say, one count of the breach of contract claim that was only against two of the owners. So there was no shared damages with respects to claims one, two, and three. So then it only is the trade secret misappropriation and the fraudulent transfer claims for which there's any shared damages. But the fact that the liability is joint doesn't mean it can't be parsed. And what I would rely upon is, and we will submit a 28- How do you do the parsing? How will you parse it for those? What BlackRock did is seek to confirm only as to the franchisees. So what we would be asking this court to do is to reverse and have the judgment entered at the district court level for each of the claims only as to the franchisees, separating out the owners. And that is consistent with what this court did in the Ralph Andrews. You want us to figure out? For the ones that need to be parsed out, and we're trying to figure out who's going to portion that. You don't want us to do that. No, and there doesn't need to be any apportioning. It would just mean that the final judgment would only say BlackRock versus franchisees, which is the only caption in this case as to each of the specific counts. So for those claims for which there's joint liability, is it your position that even though there was joint liability, the entire portion can properly be apportioned to the franchisees? Correct, because the franchisees had direct liability. And if this court were to look to the merits of the motion for summary disposition, which is really beyond the scope of... But yeah, so you're saying it's not really a hard apportionment question here because it's sort of like joint and several. It's like they have... Exactly, Your Honor. Even though half the entities are no longer in it, the ones that remain are liable for all of it. Correct. And like I said, I was... We'll submit a 28-J letter on this, but the Fifth Circuit, who was reviewing the... in the pool rate decision that the district court relied upon, had since clarified in a decision that came out after the close of the briefing that when the error at issue is only adding a non-signatory defendant to the arbitration, even if the liability is joint and several, you can easily carve them out. You just vacate the part of the award that has to do with the non-signatory defendant who has been properly added, and the remainder of the arbitration award can stand. I see that I'm going into my rebuttal time, so... You want to reserve your time? I'll reserve. Thank you, Your Honor. Very well. Thank you. Good morning, Your Honors. May it please the Court. My name is Justin Reden. I represent the franchisees, or the appellees in this case. All my clients are asking for, and all they've ever been asking for, is just a fair shot at a factual arbitration hearing that's balanced, free of bias, where they're not playing tug-of-war with the arbitrator. The District Court correctly, finally was able to wrangle in all the multitude of things that was going on here. And when they finally got in a position to rule on the pending motions, they properly vacated the award. And I want to make sure that this Court's aware, I think they are, but I just, in abundance of caution, I want the Court to be aware that the District Court has remanded the parties back to a AAA arbitration with a new arbitrator for an evidentiary hearing. And that dovetails into another point of clarification. Evidentiary hearing on what? On the entire case. And that dovetails into my next point, and I want to make sure the panel's aware that, in this case, there never was an evidentiary hearing. I don't think that we've read a case, cited a case, or relied on a case where the arbitrator has gone so far as to actually unilaterally vacate the evidentiary hearing and not even give one of the parties an opportunity to present evidence there. So we're back to square one, essentially, so far as the arbitration is concerned, but it's who's in the arbitration? Just the franchisees in BlackRock? The parties in the arbitration are the franchisees in BlackRock. We are not back to square one, though. The District Court sent us back in time to the point in time, the moment before, they tried to add the new parties and the new claims. So the prior discovery that was done in the case, which my clients answered over 300 interrogatories. It's on the record that was made before all this started. Yeah, so it's not a total redo. He just took us back in time, wiped out all the prejudice, and said, you can move forward and have your hearing. You've tried to settle this? Always, yes. Actually, let me follow up on that, because, I mean, this is multi-universe now. Our court has a very, very good mediation office, and I'm curious what your parties have tried to do that with our mediation office at all. Could you let us know what you've done there? I believe we had an initial mediation hearing, and we gave it an effort, a good faith effort. And do you think that would be fruitless to try it again? I don't. I never think that resolution's impossible. I think I probably resolved 99.9% of the cases in my entire career. Yeah, I agree. So, yes, we're interested in mediation. We've given it a good faith effort. I'm always willing to give that an effort. You've tried to settle this outside of mediation, I assume? Yes, we have. And I want to credit my opposing counsel. They're professional. They've been wonderful to work with in that regard, and we've really tried. There's a complicated case, a lot of issues, but I'm always trying to get it resolved. Yes, thank you. If I may, another high-level issue I want to set the table with is that I believe that the appellants have cited the wrong or incorrect legal standard of review with respect to the district court's factual findings. This case is primarily based on a multitude of factual findings as to what went on. Appellants cited the de novo standard, and that is the correct standard for the legal conclusions that the district court made, but it is not the correct standard for the district court's factual findings. The correct standard for the factual findings is clear error. And as this panel is well aware, clear error has a highly deferential standard to the district court's factual findings. And I think that the fact that the appellants didn't cite it, didn't analyze it, and didn't really contextualize their entire arguments in their briefing within the clear error standard, I don't think we get off go with the appeal, and I certainly don't think it can support the relief requested. Nowhere do they argue that any of the district court's factual findings were clearly erroneous, which is the standard. And so I just want to make sure that the panel's aware of that, and when we're looking at all the factual determinations, that is the appropriate standard to apply. None of it's been argued. And if the court really takes time to go through the district court's orders, Judge Simon meticulously goes through and lays out just a multitude of really important facts. And it's very informative, and it's pretty easy to get to the end of that and see that the clear error standard cannot be met. With that said, I want to shift gears and focus on a point... But would you, in your... Judge Simon was clearly upset with what... He clearly thought that the arbitrator had acted wrongly. Can you just explain in your own words what it was that was so bad that happened in the arbitration? That was so what?  Yes, I would be happy to do that. When I saw we had 15 minutes, I thought it would take us two days to go through the entire case because we've been in five or six courtrooms. But I'll give you in my own words. I took over the case when I came in and we got started. The arbitration was midstream, and the franchisors got the idea that they wanted to bring in the individual owners into the arbitration and new claims. And it's important for the panel to understand they didn't just try and add people to the arbitration, they also added claims. And that's pivotal because the claims affect the existing parties in the arbitration. It affects the award. It affects the inability to separate the award, which is a separate issue. But they tried to bring in new claims. I immediately objected, said arbitrator cannot rule on the threshold issue of adding parties. That needs to go to the court. Then that's when it's- So there's a provision in the contract that seemed to- If you have parties to a contract, if there's a contract between the two parties, the arbitrator has authority now to work within that. But if the question is whether there are parties to the contract, that's a district court's determination, not the arbitrator's, because there's no contract. So it's longstanding law. It's pretty well known. That got briefed. And then that's when the tug of war really started. And at first, just tried to work with the arbitrator on it and submit a briefing and provided the law. And we were meeting and conferring on it. And initially, we agreed to a stipulation in order that the arbitrator signed saying he was vacating all the dates. He knew we were going into court to fight this out. He vacated dates and said basically, we'll wait until this gets decided. But then there was some more wrangling and it didn't get- No court action got filed right away. And the arbitrator seemed to get irritated by that. And he started saying, you haven't gone into court. I'm going to get this thing going again. And there was some wrangling there. On February 23rd, 2022, I filed a court action to enjoin the arbitrator, to enjoin AAA, to put the brakes on this, because he was clearly moving forward. You tried to remove the arbitrator, right? Prior to that, I had tried to remove the arbitrator. I was in private meetings with AAA's vice president. AAA brought an attorney in. They usurped the arbitrator's power and put a hold on a discovery hearing for me. But then that got screwed up the way the case administrator handled it. So then I started chasing that down to correct it. And then a whole bunch of things started where I was just chasing AAA and the arbitrator around trying to put the brakes on things. So I filed a court action. Something pivotal, and I think the district court keyed in on this, is that... You filed it in state court? I did, because, yeah, I... And then it, yeah... Then we made our way up to Judge Simon. ...errors, yeah. Correct. So, but this is important. And this really puts the whole situation in context. I mean, there's a hundred things that happened that were prejudicial that Judge Simon goes through in his order. But after I filed the court action, AAA and the arbitrator hired an attorney, and that attorney appeared in the action for them. And the arbitrator brought a motion to dismiss the action. And this is at evidence record 562 and 564. He brought his motion to dismiss on April 8th. In his motion, they cite... They say that my clients are trying to unduly influence him, that we're retaliating against him. That we're trying to force him to be impartial. And that we're trying to force him to be adversarial. So in a public court filing, the arbitrator's attorney files this that... And what we're seeing with that is what he believes my client's character is. And what they're doing. Yet he's supposed to be our impartial arbitrator ruling on a $30 million case for us. Five days later, after he filed that, the arbitrator decides he is going to rule on a pending discovery motion for him. And that's when he issued the terminating sanctions. And deemed all requests for admissions admitted. Said documents. It's a wild discovery order. But so five days after he states publicly he thinks we're unduly influencing and retaliating, he moves forward and rules on this motion. And then everything really went off the rails after that. The... My opposing counsel quickly brought a motion for summary judgment on it. Judge Simon was working with us trying to speed up his process to get in front of this. But it was hard because some things were going on with his schedule and whatnot. So Judge Simon, opposing counsel, we all knew what was going on. And this arbitrator just sped up and started racing off this cliff with us. So after he issues the terminating sanctions motion, opposing counsel brings a motion for summary judgment based on it primarily. He rules on it in October, grants, rubber stamps the motion. And then on November 7th, the arbitrator just vacates the hearing. The evidentiary hearing. The whole purpose of the arbitration is to privately hire AAA and the arbitrator so that we get an evidentiary hearing. He just vacates it. Why that was particularly problematic... I'm sorry. No, keep going. Thank you. Why that was particularly problematic is because another thing that was going on, which I was working with the court on and trying to seek relief on, AAA has a whole set of procedural rules that need to be followed when a party comes into a case or you add claims. Actually, AAA doesn't even have a process to have parties. But the arbitrator wasn't following any of those rules with the new parties or claims. There needs to be an administrative hearing. The arbitrator needs to make disclosures. The parties get to decide whether that arbitrator is appropriate for those types of claims. They can disqualify. All these rules needed to be applied. He wasn't applying them. I was objecting, saying, hey, you at least need to go back and follow the procedures. He wasn't doing that. And so when he rules on this motion for summary judgment, these new parties haven't answered. They haven't filed counterclaims. No one's challenged the new claims yet. There's been no administrative hearing. They haven't agreed to the arbitrator. It's all in the briefing, but it just goes on and on. Well, are you talking about what happened before the sanctions order? Before the sanctions order, I objected and put AAA in the arbitration notice that these things needed to be followed. I was also in district court challenging all this, seeking injunctive relief, et cetera. And the arbitrator just wasn't listening to anybody and was not waiting for the court. Well, did you file a response to the motion for sanctions? Yes. I believe I filed a letter. No, I apologize, Your Honor. Prior to it, I sent a letter saying, I don't believe it's appropriate to hear this motion. We have our action pending in court. You're a defendant in the case. I've asked for a discovery referee. You need to pause this. In short, you were saying that this is in the court as to whether or not these other parties should be there and the arbitrator just continued with the arbitration. Yes, I was pointing this out. I was objecting. I was in court. I was objecting to AAA. Everyone knew what was going on. He just blatantly just kept going. And why was that unlawful or improper for him to go forward? He said, well, there's been no ruling yet. We don't know how it's going to come out. I'm not going to just sit here. Thank you, Your Honor. I only have eight seconds. Is it okay to answer? Thank you. Thank you. It was improper because, first, the AAA rules and the law requires us to get a fundamentally fair hearing. You can read 1,000 cases. They all come to the standard is that we get a fundamentally fair evidentiary hearing, period. That is the gold standard of the arbitration. We were not getting that. By him continuing to move forward despite what was going on in court and not wait for that, we were not receiving a fundamentally fair hearing. I was having to tug a war over here. I was having to deal with the court and try and get relief. You could just never catch up to what was going on. And all the arbitrator had to do was push pause. He just had to wait for the court to rule, not do anything. He wouldn't have created any prejudice or bias. He knew the court was going to rule. He knew it was in front of the court. There was no reason to not wait for the court to rule. But he knew that he was going to be disqualified if the new parties were in the case. I had already telegraphed that, that he was not going to be ruling on this case. And I can't speak, I can't get in his mindset. Something was going on. He seemed agitated. He seemed willing to throw rules out the window. I got the sense that he was possibly in the superior court judge mindset of these are the rules of civil procedure and things like that. And arbitration is different. Arbitration is fundamentally fair. He's privately hired. But the arbitration rules say that we have to object or we waive it. We have to object to the arbitrator or we waive it. If the arbitrator is not following the rules, we have to object or we waive them. AAA Rule R52 also states, and I'm going to quote it. It says, no judicial proceeding by any party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate. So the rules basically say you need to object immediately. You need to resist. And you're fine and you have safe harbor if you go to court. And that's exactly what I was doing. Okay. Do you have anything further you want to sum up with? I do. And thank you. Make it brief, but go ahead. It will be brief. This default award is a $31 million award. It's serious. It affects people's lives and livelihoods and businesses. It's massive. This warrants meticulously knowing Judge Simon's order. He spent a lot of time in it and knowing the exhibits and the records. And I know it's a lot to wrangle, but if the court is able to take the time to meticulously go through that, they will see that that clear air standard is not met. We didn't get a fundamentally fair hearing. And Judge Simon's remand is going to reset the clock and make it fair. They have every opportunity in the world now to go prove their case on a balanced, equal footing. Thank you. Thank you, Counselor. So on rebuttal, I want to address, better, just a couple of points. First, the issue of the franchisees getting a fair shot with the evidentiary hearing. The franchisees chose to abandon the arbitration, and they still have not demonstrated a basis that allowed them to do so. And what I heard from the franchisees' counsel is all these things about the objections that were made and what was going on with the arbitrator. This is beyond the scope of the court's narrow review under 10A3, which is the fundamentally fair hearing inquiry. What the court's job under 10A3 is to ensure that the parties receive the process that they agreed to. That is, notice an opportunity to present argument and evidence in front of an unbiased decision maker. The district court improperly second-guessed the fundamental fairness, but it is the procedural fairness that this court is looking at, not to the underlying substantive fairness. They chose to abandon and not respond to any of the motions, despite the opportunity to do so, and they did so at that risk. I also want to address the issue about the new claims that were added as part of the motion to amend, because that part did affect the franchisees. The franchisees never moved to vacate on the basis that the arbitrator lacked authority to add the fraudulent transfer claim, which is the only new claim that was against the franchisees. And if this court looks to the arbitration agreements, it will see that that claim is within the scope. And so again, it is outside this court's review to vacate under 9 U.S.C. 10. So in closing, in vacating the arbitration award here, the district court improperly put himself in the shoes of the arbitrator, provided no deference to the arbitrator's procedural rulings, and that is beyond the scope of review. So we ask that this court reverse with directions to confirm the award as to the franchisees. Thank you. Thank you, counsel. Thank you both for your arguments and briefing in this, I'll just say, interesting case. We'll go ahead. This one is submitted and we'll
judges: SCHROEDER, OWENS, VANDYKE